## BERNHARDT *v.* POLYGRAPHIC COMPANY OF AMERICA, INC.

No. 49.   Argued December 5, 1955.—Decided January 16, 1956.

*Manfred W. Ehrich, Jr.* and *Eugene V. Clark* argued the cause and filed a brief for petitioner.

*Joseph A. McNamara* and *Guy M. Page, Jr.* argued the cause for respondent. On the brief were *Guy M. Page* and *Guy M. Page, Jr.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This suit, removed from a Vermont court to the District Court on grounds of diversity of citizenship, was brought for damages for the discharge of petitioner under an employment contract. At the time the contract was made petitioner was a resident of New York. Respondent is a New York corporation. The contract was made in New York. Petitioner later became a resident of Vermont, where he was to perform his duties under the contract, and asserts his rights there.

The contract contains a provision that in case of any dispute the parties will submit the matter to arbitration under New York law by the American Arbitration Association, whose determination "shall be final and absolute." After the case had been removed to the District Court, respondent moved for a stay of the proceedings so that the controversy could go to arbitration in New York. The motion alleged that the law of New York governs the question whether the arbitration provision of the contract is binding.

The District Court ruled that under *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, the arbitration provision of the contract was governed by Vermont law and that the law of Vermont makes revocable an agreement to arbitrate

at any time before an award is actually made. The District Court therefore denied the stay, 122 F. Supp. 733. The Court of Appeals reversed, 218 F. 2d 948. The case is here on a petition for certiorari which we granted, 349 U. S. 943, because of the doubtful application by the Court of Appeals of *Erie R. Co.* v. *Tompkins, supra.*

A question under the United States Arbitration Act, 43 Stat. 883, as amended, 61 Stat. 669, 9 U. S. C. §§ 1–3, lies at the threshold of the case. Section 2 of that Act makes "valid, irrevocable, and enforceable" provisions for arbitration in certain classes of contracts;[1] and § 3 provides for a stay of actions in the federal courts of issues referable to arbitration under those contracts.[2] Section 2 makes "valid, irrevocable, and enforceable" only two types of contracts: those relating to a maritime transaction and those involving commerce. No maritime transaction is involved here. Nor does this contract evidence "a transaction involving commerce" within the meaning of § 2 of the Act. There is no showing that petitioner

---

[1] Section 2 provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

[2] Section 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

while performing his duties under the employment contract was working "in" commerce, was producing goods for commerce, or was engaging in activity that affected commerce, within the meaning of our decisions.[3]

The Court of Appeals went on to hold that in any event § 3 of the Act stands on its own footing. It concluded that while § 2 makes enforceable arbitration agreements in maritime transactions and in transactions involving commerce, § 3 covers all arbitration agreements even though they do not involve maritime transactions or transactions in commerce. We disagree with that reading of the Act. Sections 1, 2, and 3 are integral parts of a whole. To be sure, § 3 does not repeat the words "maritime transaction" or "transaction involving commerce," used in §§ 1 and 2. But §§ 1 and 2 define the field in which Congress was legislating. Since § 3 is a part of the regulatory scheme, we can only assume that the "agreement in writing" for arbitration referred to in § 3 is the kind of agreement which §§ 1 and 2 have brought under federal regulation. There is no intimation or suggestion in the Committee Reports that §§ 1 and 2 cover a narrower field than § 3. On the contrary, S. Rep. No. 536, 68th Cong., 1st Sess., p. 2, states that § 1 defines the contracts to which "the bill will be applicable." And H. R. Rep. No. 96, 68th Cong., 1st

---

[3] Section 1 defines "commerce" as:

". . . commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

Since no transaction involving commerce appears to be involved here, we do not reach the further question whether in any event petitioner would be included in "any other class of workers" within the exceptions of § 1 of the Act.

Sess., p. 1, states that one foundation of the new regulating measure is "the Federal control over interstate commerce and over admiralty." If respondent's contention is correct, a constitutional question might be presented. *Erie R. Co.* v. *Tompkins* indicated that Congress does not have the constitutional authority to make the law that is applicable to controversies in diversity of citizenship cases. *Shanferoke Coal & Supply Corp.* v. *Westchester Service Corp.*, 293 U. S. 449, applied the Federal Act in a diversity case. But that decision antedated *Erie R. Co.* v. *Tompkins;* and the Court did not consider the larger question presented here—that is, whether arbitration touched on substantive rights, which *Erie R. Co.* v. *Tompkins* held were governed by local law, or was a mere form of procedure within the power of the federal courts or Congress to prescribe. Our view, as will be developed, is that § 3, so read, would invade the local law field. We therefore read § 3 narrowly to avoid that issue. *Federal Trade Commission* v. *American Tobacco Co.*, 264 U. S. 298, 307. We conclude that the stay provided in § 3 reaches only those contracts covered by §§ 1 and 2.

The question remains whether, apart from the Federal Act, a provision of a contract providing for arbitration is enforceable in a diversity case.

The Court of Appeals, in disagreeing with the District Court as to the effect of an arbitration agreement under *Erie R. Co.* v. *Tompkins,* followed its earlier decision of *Murray Oil Products Co.* v. *Mitsui & Co.*, 146 F. 2d 381, 383, which held that, "Arbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law: it is like a reference to a master, or an 'advisory trial' under Federal Rules of Civil Procedure . . . ."

We disagree with that conclusion. We deal here with a right to recover that owes its existence to one of the States, not to the United States. The federal court en-

forces the state-created right by rules of procedure which it has acquired from the Federal Government and which therefore are not identical with those of the state courts. Yet, in spite of that difference in procedure, the federal court enforcing a state-created right in a diversity case is, as we said in *Guaranty Trust Co.* v. *York*, 326 U. S. 99, 108, in substance "only another court of the State." The federal court therefore may not "substantially affect the enforcement of the right as given by the State." *Id.*, 109. If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought. For the remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State. The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result. Arbitration carries no right to trial by jury that is guaranteed both by the Seventh Amendment and by Ch. 1, Art. 12th, of the Vermont Constitution. Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial—all as discussed in *Wilko* v. *Swan*, 346 U. S. 427, 435–438.[4] We said in the

---

[4] Whether the arbitrators misconstrued a contract is not open to judicial review. *The Hartbridge*, 62 F. 2d 72; *Mutual Benefit Health & Acc. Assn.* v. *United Cas. Co.*, 142 F. 2d 390. Questions of fault or neglect are solely for the arbitrators' consideration. *James Richardson & Sons* v. *W. E. Hedger Transportation Corp.*, 98 F. 2d 55. Arbitrators are not bound by the rules of evidence. *Burchell* v. *Marsh*, 17 How. 344; *Springs Cotton Mills* v. *Buster Boy Suit Co.*, 275 App. Div. 196, 200, 88 N. Y. S. 2d 295, 298, affirmed, 300 N. Y. 586, 89 N. E. 2d 877. They may draw on their personal knowledge in making an award. *American Almond Products Co.* v. *Consolidated*

*York* case that "The nub of the policy that underlies *Erie R. Co.* v. *Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result." 326 U. S., at 109. There would in our judgment be a resultant discrimination if the parties suing on a Vermont cause of action in the federal court were remitted to arbitration, while those suing in the Vermont court could not be.

The District Court found that if the parties were in a Vermont court, the agreement to submit to arbitration would not be binding and could be revoked at any time before an award was made. He gave as his authority *Mead's Admx.* v. *Owen,* 83 Vt. 132, 135, 74 A. 1058, 1059, and *Sartwell* v. *Sowles,* 72 Vt. 270, 277, 48 A. 11, 14, decided by the Supreme Court of Vermont. In the *Owen* case the court, in speaking of an agreement to arbitrate, held that ". . . either party may revoke the submission at any time before the publication of an award." 83 Vt., at 135, 74 A., at 1059. That case was decided in 1910. But it was agreed on oral argument that there is no later authority from the Vermont courts, that no fracture in the rules announced in those cases has appeared in subsequent rulings or dicta, and that no legislative movement is under way in Vermont to change the result of those cases. Since the federal judge making those findings is from the Vermont bar, we give special weight to his statement of what the Vermont law is. See

*Pecan Sales Co.,* 144 F. 2d 448; *The Guldborg,* 1 F. Supp. 380; *Springs Cotton Mills* v. *Buster Boy Suit Co., supra.* Absent agreement of the parties, a written transcript of the proceedings is unnecessary. *A. O. Andersen Trading Co.* v. *Brimberg,* 119 Misc. 784, 197 N. Y. S. 289; *Application of Shapiro,* 197 Misc. 241, 97 N. Y. S. 2d 644, modified, 277 App. Div. 927, 98 N. Y. S. 2d 451. Swearing of witnesses may not be required. *Application of Shapiro, supra.* And the arbitrators need not disclose the facts or reasons behind their award. *Shirley Silk Co.* v. *American Silk Mills, Inc.,* 257 App. Div. 375, 377, 13 N. Y. S. 2d 309, 311.

*MacGregor* v. *State Mutual Co.,* 315 U. S. 280; *Hillsborough* v. *Cromwell,* 326 U. S. 620, 630; *Steele* v. *General Mills,* 329 U. S. 433, 439. We agree with him that if arbitration could not be compelled in the Vermont courts, it should not be compelled in the Federal District Court. Were the question in doubt or deserving further canvass, we would of course remand the case to the Court of Appeals to pass on this question of Vermont law. But, as we have indicated, there appears to be no confusion in the Vermont decisions, no developing line of authorities that casts a shadow over the established ones, no dicta, doubts or ambiguities in the opinions of Vermont judges on the question, no legislative development that promises to undermine the judicial rule. We see no reason, therefore, to remand the case to the Court of Appeals to pass on this question of local law.

Respondent argues that since the contract was made in New York and the parties contracted for arbitration under New York law, New York arbitration law should be applied to the enforcement of the contract. A question of conflict of laws is tendered, a question that is also governed by Vermont law. See *Klaxon Co.* v. *Stentor Co.,* 313 U. S. 487. It is not clear to some of us that the District Court ruled on that question. We mention it explicitly so that it will be open for consideration on remand of the cause to the District Court.

The judgment of the Court of Appeals is reversed and the cause is remanded to the District Court for proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, concurring.

It is my view that the judgment of the Court of Appeals should be reversed and the case remanded to that court and not to the District Court.

This action was brought in the Bennington County Court of the State of Vermont by petitioner, a citizen of

Vermont, against respondent, a corporation of the State of New York. Respondent removed the case to the United States District Court for the District of Vermont. The subject matter of the litigation is a contract made between the parties in New York, and the sole basis of the jurisdiction of the District Court is diversity of citizenship. Not only was the contract made in New York, but the parties agreed to the following provision in it:

> "Fourteenth: The parties hereto do hereby stipulate and agree that it is their intention and covenant that this agreement and performance hereunder and all suits and special proceedings hereunder be construed in accordance with and under and pursuant to the laws of the State of New York and that in any action special proceeding or other proceeding that may be brought arising out of, in connection with or by reason of this agreement, the laws of the State of New York shall be applicable and shall govern to the exclusion of the law of any other forum, without regard to the jurisdiction in which any action or special proceeding may be instituted."

Respondent invoked another provision of the contract whereby disputes under the agreement were to be submitted to arbitration subject to the regulations of the American Arbitration Association and the pertinent provisions of the New York Arbitration Act. It did so by a motion to stay the proceeding in the District Court pending arbitration.

The District Court denied the stay because, on its reading of the Vermont cases, Vermont law, while recognizing the binding force of such an agreement by way of a suit for damages, does not allow specific performance or a stay pending arbitration. It rested on a decision rendered by the Supreme Court of Vermont in a bill for an accounting

evidently between two Vermonters and relating wholly to a Vermont transaction, *i. e.,* a controversy about personal property on a Vermont farm. *Mead's Admx.* v. *Owen,* 83 Vt. 132, 74 A. 1058.[1] This case was decided in 1910 and, in turn, relied on *Aspinwall* v. *Tousey,* 2 Tyler (Vt.) 328, decided in 1803, authorizing revocation of a submission to arbitration at any time before the publication of an award.

The Court of Appeals found it unnecessary to consider what the Vermont law was today, for it held that the arbitration provision did not concern a matter of "substantive" law, for which, in this diversity case, Vermont law would be controlling on the United States District Court sitting in Vermont. It held that the arbitration provision fell within the law of "procedure" governing an action in the federal court, whatever the source of the jurisdiction. So holding, the Court of Appeals found § 3 of the United States Arbitration Act, 9 U. S. C. § 3, applicable and, accordingly, directed the District Court to heed that Act and allow the matter to go to arbitration. 218 F. 2d 948.

This Court explained in *Guaranty Trust Co.* v. *York,* 326 U. S. 99, why the categories of "substance" and "procedure" are, in relation to the application of the doctrine of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, less than self-defining. They are delusive. The intrinsic content of what is thought to be conveyed by those terms in the particular context of a particular litigation becomes the essential inquiry. This mode of approaching the problem has had several applications since the *York* decision. I agree with the Court's opinion that the differences between arbitral and judicial determination of a controversy under a contract sufficiently go to the merits of the

---

[1] The court also cited *Sartwell* v. *Sowles,* 72 Vt. 270, 48 A. 11.

outcome, and not merely because of the contingencies of different individuals passing on the same question, to make the matter one of "substance" in the sense relevant for *Erie R. Co.* v. *Tompkins.* In view of the ground that was taken in that case for its decision, it would raise a serious question of constitutional law whether Congress could subject to arbitration litigation in the federal courts which is there solely because it is "between Citizens of different States," U. S. Const., Art. III, § 2, in disregard of the law of the State in which a federal court is sitting. Since the United States Arbitration Act of 1925 does not obviously apply to diversity cases, in the light of its terms and the relevant interpretive materials, avoidance of the constitutional question is for me sufficiently compelling to lead to a construction of the Act as not applicable to diversity cases.[2] Of course this implies no opinion on the constitutional question that would be presented were Congress specifically to make the Arbitration Act applicable in such cases. Furthermore, because the Act is not here applicable, I abstain from any consideration of the scope of its provisions in cases which are in federal courts on a jurisdictional basis other than diversity of citizenship.

Vermont law regarding such an arbitration agreement as the one before us, therefore, becomes decisive of the litigation. But what is Vermont law? One of the difficulties, of course, resulting from *Erie R. Co.* v. *Tompkins,* is that it is not always easy and sometimes difficult to ascertain what the governing state law is. The essence of the doctrine of that case is that the difficulties of ascertaining state law are fraught with less mischief than disregard of the basic nature of diversity jurisdiction, namely, the enforcement of state-created rights and state

---

[2] *Shanferoke Coal & Supply Corp.* v. *Westchester Service Corp.*, 293 U. S. 449, was a diversity case wherein § 3 of the Arbitration Act was applied. But the case was pre-*Erie,* and the Court's attention was not directed toward the question.

policies going to the heart of those rights. If Judge Gibson's statement of what is the contemporary Vermont law relevant to the arbitration provision now before him were determinative, that would be that. But the defendant is entitled to have the view of the Court of Appeals on Vermont law and cannot, under the Act of Congress, be foreclosed by the District Court's interpretation.

As long as there is diversity jurisdiction, "estimates" are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law.[3] See *Pomerantz* v. *Clark*, 101 F. Supp. 341. This Court ought not to by-pass the Court of Appeals on an issue which, if the Court of Appeals had made a different estimate from the District Court's, of contemporaneous Vermont law regarding such a contract as the one before us, this Court, one can confidently say, would not have set its view of Vermont law against that of the Court of Appeals. For the mere fact that Vermont in 1910 restated its old law against denying equitable relief for breach of a promise to arbitrate a contract made under such Vermont law, is hardly a conclusive ground for attributing to the Vermont Supreme Court application of this equitable doctrine in 1956 to a contract made in New York with explicit agreement by the parties that the law of New York which allows such a stay as was here sought, New York Civil Practice Act, § 1451, should govern. Cf. *Brown* v. *Perry*, 104 Vt. 66, 156 A. 910. Law does change with times and circumstances, and not merely through legislative reforms.[4] It is also to be noted that

---

[3] It is peculiarly true of the problem before us, that law is a prophecy "of what the courts will do in fact." Holmes, The Path of the Law, in Collected Legal Papers, p. 173.

[4] That the Vermont Supreme Court does not obstinately adhere to its past decisions, that for it too law is living, is illustrated by the following instances: *Capello's Administrator* v. *Aero Mayflower Transit Co.*, 116 Vt. 64, 68 A. 2d 913, overruling *Ronan* v. *Turnbull*

law is not restricted to what is found in Law Reports, or otherwise written. See *Nashville, C. & St. L. R. Co.* v. *Browning,* 310 U. S. 362, 369. The Supreme Court of Vermont last spoke on this matter in 1910. The doctrine that it referred to was not a peculiar indigenous Vermont rule. The attitude reflected by that decision nearly half a century ago was the current traditional judicial hostility against ousting courts, as the phrase ran, of their jurisdiction. See the adverse comments of Judge Hough in *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co., Ltd.,* 222 F. 1006, against what he assumed to be the law in the federal courts, and compare with the shift in judicial attitude reflected by the reservation of this

---

*Co.,* 99 Vt. 280, 287–288, 131 A. 788, 791–792 (proof that an automobile involved in an accident was owned by the defendant at the time of the accident does not make a prima facie case that the operator of the automobile was engaged in the defendant's service); *Bartlett* v. *Bonazzi,* 91 Vt. 192, 99 A. 886, overruling *Fisher* v. *Brown,* 1 Tyler (Vt.) 387 (action for deceit will not lie for seller's fraudulent misrepresentations concerning his financial position which induced buyer to extend credit); *State* v. *Pianfetti,* 79 Vt. 236, 65 A. 84, overruling *State* v. *Kittle,* 2 Tyler (Vt.) 471 (jury verdict of guilty on one of four counts in an indictment operated as an acquittal on the other three counts); *Perry* v. *Shumway,* 73 Vt. 191, 50 A. 1069, overruling *Hartland* v. *Hackett,* 57 Vt. 92 (the issuing of an *extent* against a delinquent tax collector constitutes an election of remedies which bars an action on the collector's bond); *State* v. *Burpee,* 65 Vt. 1, 25 A. 964, overruling *State* v. *Croteau,* 23 Vt. 14 (in a criminal trial all questions of law as well as fact are for the jury); *Woodrow* v. *O'Conner,* 28 Vt. 776, and *Bagley* v. *Wiswall,* Brayton 23, overruling *Drake* v. *Collins,* 1 Tyler (Vt.) 79 (an arbitration note is void for want of consideration). See also *Grenier* v. *Alta Crest Farms, Inc.,* 115 Vt. 324, 58 A. 2d 884, deciding that the character of the employee right created by the Vermont Workmen's Compensation Act is not the same as the character of the right which existed at common law. The opinion draws upon the recorded attitude of other jurisdictions to justify its departure from the contrary theory which it had set forth in *Kelley* v. *Hoosac Lumber Co.,* 96 Vt. 153, 118 A. 520.

question in Mr. Justice Brandeis' opinion for the Court in *Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109.[5] To be sure, a vigorous legislative movement got under way in the 1920's expressive of a broadened outlook of view on this subject. But courts do not always wait for legislation to find a judicial doctrine outmoded. Only last Term, although we had no statute governing an adjudication, we found significance in a relevant body of enactments elsewhere: "A steady legislative trend, presumably manifesting a strong social policy, properly makes demands on the judicial process." *National City Bank of New York* v. *Republic of China,* 348 U. S. 356, 360.

Surely in the light of all that has happened since 1910 in the general field of the law of arbitration, it is not for us to assume that the Court of Appeals, if it had that question for consideration, could not have found that the law of Vermont today does not require disregard of a pro-

---

[5] Judge Hough, in 1915, stated:

"It has never been denied that the hostility of English-speaking courts to arbitration contracts probably originated (as Lord Campbell said in Scott v. Avery, 4 H. L. Cas. 811)—'in the contests of the courts of ancient times for extension of jurisdiction—all of them being opposed to anything that would altogether deprive every one of them of jurisdiction.'

"A more unworthy genesis cannot be imagined. Since (at the latest) the time of Lord Kenyon, it has been customary to stand rather upon the antiquity of the rule than upon its excellence or reason . . . ." 222 F., at 1007.

"I think the decisions cited show beyond question that the Supreme Court has laid down the rule that such a complete ouster of jurisdiction as is shown by the clause quoted [the arbitration clause] . . . is void in a federal forum." 222 F., at 1012.

On the other hand, in 1924 this Court observed in *Red Cross Line:* "we have no occasion to consider whether the unwillingness of the federal courts to give full effect to executory agreements for arbitration can be justified." 264 U. S., at 125.

vision of a contract made in New York, with a purposeful desire to have the law of New York govern, to accomplish a result that today may be deemed to be a general doctrine of the law. Of course, if the Court of Appeals, versed in the general jurisprudence of Vermont and having among its members a Vermont lawyer, should find that the Vermont court would, despite the New York incidents of the contract, apply Vermont law and that it is the habit of the Vermont court to adhere to its precedents and to leave changes to the legislature, it would not be for the federal court to gainsay that policy. I am not suggesting what the Court of Appeals' answer to these questions would be, still less what it should be. I do maintain that the defendant does have the right to have the judgment of the Court of Appeals on that question and that it is not for us to deny him that right.

I would remand the case to the Court of Appeals for its determination of Vermont law on matters which the basis of its decision heretofore rendered it needless to consider.

MR. JUSTICE HARLAN, concurring.

I concur in the opinion of the Court except insofar as it undertakes to review and affirm the District Court's interpretation of Vermont law. I agree with MR. JUSTICE FRANKFURTER that the review of questions of state law should ordinarily be left to the Courts of Appeals and would remand the case to the Court of Appeals for that purpose.

MR. JUSTICE BURTON, dissenting.

Whether or not § 3 of the Federal Arbitration Act is applicable to this contract, the judgment of the Court of Appeals should be affirmed.

Assuming the validity of the arbitration clause in the New York contract here involved, I regard the procedure

which it prescribes as a permissible "form of trial." See *Murray Oil Products Co.* v. *Mitsui & Co.,* 146 F. 2d 381. Accordingly, the United States District Court for the District of Vermont may stay its own proceedings to await completion of the arbitration proceedings, although a state court of Vermont would not do likewise. I do not interpret *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, or *Guaranty Trust Co.* v. *York,* 326 U. S. 99, as requiring the contrary.