Brian **CONWAY**, a minor by his natural guardians, Francis Conway and Marilyn Conway, et al.

v.

Eugene B. **SPITZ**.

Civ. A. No. 75–643.

United States District Court, E. D. Pennsylvania.

Nov. 20, 1975.

---

Lester J. Schaffer, Philadelphia, Pa., for plaintiff.

John J. Brooks, Media, Pa., for defendant and third party plaintiff, Spitz.

J. J. Lambert and James J. McCabe, Philadelphia, Pa., for Samuelson.

Joseph D. Shein, Philadelphia, Pa., for Chaplynsky.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiffs Francis Conway and Marilyn Conway have petitioned this Court to amend their complaint. We deny the petition for the reasons set forth below.

This is a medical malpractice action. It is alleged that the defendant negligently treated the minor, Brian Conway, and as a result of this negligence it became necessary to amputate Brian's right foot. Brian's parents instituted suit in his behalf, as guardians, and they included a claim in their own right. The instant petition pertains only to the latter claim. Plaintiffs Francis and Marilyn Conway (hereinafter, plaintiffs) would add a second count to their complaint, in which they demand damages compensating them for

> "great and substantial emotional distress and psychic pain as a result of the severe and disfiguring injuries suffered by minor plaintiff Brian Conway as a result of defendant's negligence."

This is a diversity case in which Pennsylvania law governs. It is admitted that there is no Pennsylvania authority squarely holding that the theory of liability of the proposed amendment states a cause of action. It is argued, however, that recent decisions of the Pennsylvania Supreme Court, in which it has departed from and expressly overruled the so-called impact rule, fairly imply that the parents have a claim under current Pennsylvania law. Although the petitioners have carefully evaluated the underlying rationale of the recent state court decisions, we cannot agree with their conclusion as to the breadth of the holdings.

In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), the Pennsylvania Supreme Court, per Justice Roberts, overruled the impact rule. Under that rule, one who was put in danger by the negligent acts of another party, and whose distress at this occurrence resulted in physical disabilities, could recover from the negligent party if—and only if—there was impact against the plaintiff by the forces set in motion by the defendant. Justice Roberts noted that virtually every jurisdiction which reviewed the impact rule in the last several decades had abandoned it. It was also said that advancements in medical science made it incumbent upon the court to give the plaintiff in that case the opportunity to show that he had indeed suffered emotional stress and that there was a casual connection between this stress and his physical injuries. Notwithstanding its wide-ranging policy discussion, the Court, in its conclusion, carefully stated the limits to its reformation of the law:

> "We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact. Since appellant's complaint alleges facts which if proven will establish that the negligent force was aimed at him and put him in personal danger of physical impact, and that he actually did fear the force, this case must pro-

ceed to trial." 436 Pa. at 413, 261 A.2d at 90.

■ The facts of the instant case fall outside this limiting language in *Niederman* in two important respects. First, our petitioners were not in personal danger of physical impact. Second, they did not actually fear a physical impact.[1] We cannot say that granting the instant petition would be merely an intelligent application of the *Niederman* principle to a slightly altered set of facts. Rather, we would be creating a new class of potential plaintiffs—persons whose mental pain and suffering was caused by the emotional demands of caring for and sharing the life of a person who was directly injured by the defendant's negligence.

It is also significant that the plaintiff in *Niederman* was standing next to his son when his son was hit by an automobile. The plaintiff further alleged that he suffered chest pains almost immediately thereafter; that he was subsequently examined in a hospital, confined for five weeks, and diagnosed as having severe coronary problems. Thus, the Court's discussion of the bearing of advances in medical science on the scope of the cause of action for mental suffering must be read in the context of a case where the plaintiff alleged a specific and severe physical manifestation of the shock which he experienced, and in which his further claims for shock and mental pain were parasitic to this claim of a severe physical disability. In the instant case, there is no allegation of a physical illness resulting from the mental distress.[2]

■ We are also referred to *Papieves et al. v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970). It was there held that the plaintiffs stated a cause of action by alleging that they suffered shock and mental suffering as a consequence of the defendant's intentional mishandling of the body of a deceased relative. In *Papieves,* as in the instant case, there was no allegation of a severe physical disability (of a kind fairly well understood by medical science). Another similarity is that the plaintiffs' allegations in each case contains indicia of reliability. Just as the vast majority of people would be distressed to see the body of a deceased relative being mishandled, any but the most hard-hearted parent would empathize with the plight of his mutilated child, and would suffer emotional stress daily in the process of helping the child cope with his handicap. The crucial difference, however, is that the Conways do not allege that the injury to Brian Conway was caused by intentional, outrageous, or wanton conduct by the defendant. The law of torts does not compensate for all injuries caused by breaches of legal duties. All other things being equal, the scope of liability for intentionally inflicted injuries frequently is broader than the scope of liability for negligently inflicted injuries. Thus, *Papieves* is not authority for granting the petition.

In *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), it was held that a 1910 Vermont Supreme Court decision represented the state law applicable in a 1956 diversity case in federal court. The Supreme Court noted that there was

"no confusion in the Vermont decisions, no developing line of authorities that casts a shadow over the established ones, no dicta, doubts or ambiguities in the opinions of Vermont judges on the question, no legislative development that promises to undermine the judicial rule." 350 U.S. at 205, 76 S.Ct. at 277.

The principle of *Bernhardt* is applicable here even though the Pennsylvania precedents are not as well settled as were the Vermont ones considered in

---

1. A person might be frightened because he incorrectly believed himself to be in danger.

2. Presumably, plaintiffs would offer proof at trial of physical symptoms, not necessarily constituting illness, to verify their mental state.

that case. Although Pennsylvania has a "developing line of authorities that casts a shadow over the established ones", we think there is little or no "confusion" in the Pennsylvania law. Rather, the Supreme Court of Pennsylvania has pursued a careful evolution in the rules of recovery for mental pain and suffering in tort actions. The Court has not gone so far as to recognize a cause of action for the mental pain and suffering of a person who neither was put in danger, nor actually feared that he was put in danger, by the defendant's breach of a legal duty where there is no allegation of intentional, outrageous or wanton conduct, nor an allegation of a severe and concrete physical manifestation[3] of the mental suffering. Moreover, the Court's explanation of the policy behind its *Niederman* holding does not necessitate a further evolution of the rule.

We are not saying that *Niederman* and *Papieves* are to be confined to their facts. It is indisputedly the role of this Court, sitting in a diversity case, to apply intelligently the principles of recent Pennsylvania decisions to factual situations that have not expressly been ruled on by the Pennsylvania courts. If we granted the petition, however, we would be doing more than merely elaborating the current Pennsylvania law. We would be extending it significantly beyond its present state, in the face of recent decisions of the highest court of Pennsylvania.

### ORDER

And now, to wit, this 20th day of November, 1975, for the reasons stated in the accompanying Memorandum, it is hereby Ordered that amendment of pleadings set forth in the petition to amend the complaint is Denied.

And it is so ordered.

---

3. One whose etiology is well understood by the medical profession.