ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **RANDOLFO RIVERA SANFELIZ**<br><br>Apelante<br><br>v.<br><br>**FIRSTBANK PUERTO RICO, INC.**<br><br>Apelada | KLAN202301016 | **APELACION acogido como CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2020CV02974**<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidente, el Juez Candelaria Rosa, la Jueza Álvarez Esnard, la Jueza Díaz Rivera y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de marzo de 2024.

Comparece ante nos el señor Rodolfo Rivera Sanfeliz (señor Rivera Sanfeliz) y nos solicita que revoquemos una *Sentencia* emitida el 17 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[2] En virtud del aludido dictamen, el TPI desestimó una *Demanda* sobre revocación de laudo parcial de arbitraje, incoada por el señor Rivera Sanfeliz contra FirstBank Puerto Rico (FirstBank).

Por los fundamentos que esbozamos a continuación, denegamos la expedición del auto de *certiorari*.

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Maritere Brignoni Mártir.

[2] Apéndice de *Apelación*, Anejo 42, págs. 0958-0971. Archivada y notificada en autos el 21 de junio de 2023. El 6 de julio de 2023, el señor Rivera Sanfeliz peticionó reconsideración, la cual el TPI declaró No Ha Lugar mediante una *Resolución* emitida el 11 de octubre de 2023 y notificada el 12 de octubre de 2023.

Veamos los antecedentes fácticos y procesales que fundamentan nuestra determinación.

-I-

La controversia ante nos dimanó el 29 de mayo de 2020 cuando el señor Rivera Sanfeliz instó una *Demanda de revocación del laudo de arbitraje al amparo del Artículo 22 de la Ley de Arbitraje, infra*, en contra de FirstBank.[3] Mediante esta, el señor Rivera Sanfeliz arguyó que FirstBank lo despidió súbitamente de su puesto como Vicepresidente Ejecutivo de la Banca Mayorista, sin justa causa y en incumplimiento con los términos y las condiciones del contrato de empleo por soslayar avisarle sobre la terminación del empleo con noventa (90) días de anticipación. Además, adujo que FirstBank eliminó únicamente su puesto y lo despidió sin indemnizarlo, amparado en el *Trouble Asset Relief Program* (TARP), un programa temporero del Departamento del Tesoro federal para proveer ayuda financiera a ciertas instituciones bancarias. Ante estos hechos y varios trámites procesales, alegó que presentó una tercera demanda de arbitraje ante la *American Arbitration Association* (AAA) por incumplimiento de su contrato de empleo y despido injustificado. No obstante, precisó que un Panel de Árbitros denegó el pago de su indemnización, sin adjudicar conforme al derecho contractual puertorriqueño y sin detallar su razonamiento, privándole de una adjudicación imparcial, en violación al debido proceso de ley. Por ello, solicitó la revocación del laudo parcial de arbitraje, notificado el 31 de enero de 2020, y que se le conceda su indemnización.

Luego de varias incidencias procesales, el 9 de septiembre de 2020, FirstBank solicitó la desestimación de la *Demanda* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, sin

---

[3] Tomamos conocimiento judicial del expediente del caso SJ2020CV02974 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 1.

someterse a la jurisdicción del TPI.[4] En esta, FirstBank alegó que el señor Rivera Sanfeliz renunció a su puesto, dado que su patrono se acogió a las siguientes leyes de estímulo económico: *American Reinvestment and Recovery Act* (AARA), *Emergency Economic Stabilization Act* (EESA) y TARP. Argumentó que, a tenor con los aludidos estatutos federales, el señor Rivera Sanfeliz carecía de derecho para exigir su reclamación dado que la terminación de la relación laboral ocurrió durante el periodo de inversión de TARP. A su vez, aseveró que al señor Rivera Sanfeliz se le requirió firmar un *Waiver Agreement,* en el que relevó al Departamento del Tesoro federal y a FirstBank de toda reclamación que pudiera tener como resultado de su contrato de empleo. Por otro lado, FirstBank sostuvo que el señor Rivera Sanfeliz estaba impedido de impugnar el laudo arbitral, ya que la revisión judicial de un laudo sólo está disponible cuando las partes convienen que la controversia se resuelva conforme a derecho y ello no se dispuso en el contrato de empleo del señor Rivera Sanfeliz, en el cual se estableció la siguiente cláusula de arbitraje:

> [...]
> 22. "Arbitration. Any controversy as to the interpretation of this contract must be submitted before three (3) arbitrators to be appointed by the American Arbitration Association ("AAA"). The rules and regulations of the AAA shall govern the procedures of said arbitration. The award of a majority of arbitrators shall be binding and final on the parties".
> [...]

FirstBank alegó que conforme con las determinaciones de hechos estipuladas por ambas partes en el *Joint Statement of Uncontested Material Fact,* la demanda no aduce hechos que ameriten la concesión de un remedio a favor del señor Rivera Sanfeliz. A su vez, FirstBank solicitó que el señor Rivera Sanfeliz le

---

[4] Apéndice de *Apelación*, Anejo 31, págs. 0794-0822.

reembolsara los honorarios de abogados y el pago de gastos incurridos en los procedimientos de arbitraje.

Por su parte, el 28 de septiembre de 2020, el señor Rivera Sanfeliz presentó su oposición a la solicitud de desestimación de FirstBank.[5] El señor Rivera Sanfeliz señaló que en el contrato de empleo, las partes acordaron que en los laudos arbitrales debía gobernar las Reglas de la AAA. Expuso que las conclusiones de derecho del laudo emitido por el Panel de Árbitros debían ser revisables *de novo* dado que no se resolvieron conforme a derecho y las controversias se dispusieron sumariamente. Por otro lado, especificó que el TPI no debía otorgar deferencia a las determinaciones de hechos del Panel de Árbitros, puesto que las Reglas de la AAA establecen que:

> The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

Además, el señor Rivera Sanfeliz discutió que nada en la reglamentación federal sobre AARA, EESA y TARP enuncia que al culminar la participación del Departamento del Tesoro federal sobre los activos de FirstBank, no se podía indemnizar por concepto de *severance payment* y por despido injustificado, cuando expresamente estaba establecido en su contrato de empleo. Esto, dado que en la enmienda al contrato de empleo se dispuso la siguiente cláusula:

> [...] the limitations imposed herein shall apply during the period that the Treasury holds the TARP investment in the Corporation pursuant to the provision of Section 101(a) of EESA; accordingly upon the repayment of the TARP Investment the provisions of the Employment Agreement shall revert to its original terms and conditions.

---

[5] *Íd.*, Anejo 38, págs. 0917-0930.

Por entender que las restricciones del TARP tuvieron un efecto temporero, el señor Rivera Sanfeliz razonó que, desde el 10 de mayo de 2017, fecha en que finalizó el periodo de inversión de TARP, su contrato de empleo revirtió a sus términos y condiciones originales, haciendo efectivo su derecho a exigir la indemnización contractual convenida.

El 15 de octubre de 2023, FirstBank replicó a la oposición del señor Rivera Sanfeliz sobre la solicitud de desestimación.[6] En esta, reclamó que las determinaciones de hechos expuestas en el laudo en controversia fueron estipuladas por las partes durante la primera demanda de arbitraje en el *Joint Statement of Uncontested Material Fact.* Con respecto a la revisión judicial, FirstBank manifestó que las partes no pactaron expresamente que las controversias sometidas a arbitraje sean resueltas conforme a derecho, sino de conformidad con las Reglas de la AAA. En lo atinente a revertir los términos y las condiciones del contrato de empleo original y el pago de las indemnizaciones solicitadas por el señor Rivera Sanfeliz al finalizar el periodo de inversión de TARP, FirstBank indicó que la reversión de los contratos de empleado sólo aplicaba a los empleados que permanecieran en la institución financiera posterior al periodo de inversión de TARP.

Así las cosas, el 17 de junio de 2023, el TPI emitió una *Sentencia* en la que declaró Ha Lugar la solicitud de desestimación solicitada por FirstBank y desestimó la *Demanda* incoada por el señor Rivera Sanfeliz.[7] El Foro Primario consignó que surge de la cláusula de arbitraje en el contrato de empleo del señor Rivera Sanfeliz que las partes no pactaron que las controversias sometidas al Panel de Árbitros se resuelvan conforme a derecho, por lo que la facultad revisora del TPI era estrecha y limitada a que el demandante

---

[6] *Íd.*, Anejo 37, págs. 0932-0944.
[7] *Íd.*, Anejo 42, págs. 0958-0971. Archivada y notificada en autos el 21 de junio de 2023.

demuestre fraude; ausencia de jurisdicción; omisión en resolver todas las cuestiones en controversia, o contrariedad a la política pública. Por otro lado, el TPI razonó que ningún acuerdo de terminación de empleo puede estar estructurado para que los ejecutivos sean renumerados posterior al periodo de inversión de TARP, dado que la culminación de su empleo ocurrió mientras la institución se encontraba bajo TARP. El Foro recurrido estableció que el Departamento del Tesoro federal le requirió al señor Rivera Sanfeliz firmar un *Waiver Agreement* en el que renunció a cualquier reclamación por compensación o beneficios. Por cuanto, el TPI concluyó que las determinaciones del laudo en controversia son cónsonas con las disposiciones de ley y el contrato de empleo.

No satisfecho con la determinación del Tribunal, el 6 de julio de 2023, el señor Rivera Sanfeliz solicitó reconsideración,[8] la cual, tras varios trámites procesales, el 11 de octubre de 2023, el TPI declaró No Ha Lugar.[9] El Foro recurrido reiteró que las partes no pactaron que el laudo se emitiera conforme a derecho.

Inconforme, 13 de noviembre de 2023, el señor Rivera Sanfeliz compareció ante esta Curia apelativa y señaló que el TPI cometió el siguiente error:

> **SEÑALAMIENTO DE ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA SUMARIAMENTE, TRAS CONCLUIR QUE EL LAUDO NO TENÍA QUE SER EMITIDO CONFORME A DERECHO, EN VEZ DE APLICAR EL DERECHO CONTRACTUAL PUERTORRIQUEÑO AL ASUNTO PLANTEADO.

En esencia, el señor Rivera Sanfeliz nos planteó que las partes acordaron que el laudo emitido por el Panel de Árbitros de la AAA debe ser emitido conforme a derecho por establecer que "[the award] shall be executed in the manner required by law". Por esto, el señor Rivera Sanfeliz expuso que el laudo arbitral objeto de este recurso

---

[8] *Íd.*, Anejo 43, págs. 0972-0985.
[9] *Íd.*, Anejo 47, págs. 1002-1003. Archivada y notificada en autos el 12 de octubre de 2023.

debía ser revisado en toda su extensión y el TPI debía corregir en su totalidad las conclusiones de derecho emitidas en el laudo arbitral en controversia, sin otorgarle deferencia al Panel de Árbitros. A su vez, arguyó que dado que el Panel de Árbitros determinó que no existía controversia sobre los hechos medulares, el Foro Primario debió revisar *de novo* las conclusiones de Derecho, puesto que el Panel de Árbitros no aplicó correctamente el derecho contractual puertorriqueño al determinar que los términos y las condiciones en el contrato de empleo con FirstBank no se revirtieron al finalizar el periodo de inversión de TARP.

Por su parte, el 8 de diciembre de 2023, FirstBank presentó su alegato en oposición al recurso. En síntesis, adujo que no procede la revisión judicial o sustitución del criterio establecido por el Panel de Árbitros por el criterio judicial, debido al principio de gran deferencia hacia los laudos arbitrales. FirstBank reiteró que las partes no acordaron que el laudo arbitral se resuelva conforme a derecho, sino que las partes debían regirse de conformidad con las Reglas de la AAA. En la alternativa, FirstBank entendió que tanto el laudo emitido por el Panel de Árbitros se emitió conforme a derecho y contiene determinaciones de hechos y conclusiones de derecho.

Con la comparecencia de ambas partes, procedemos a pormenorizar la normativa jurídica atinente a este recurso.

-II-

-A-

A tenor con nuestro ordenamiento jurídico, el *certiorari* es el recurso adecuado para cuestionar ante esta Curia apelativa cualquier resolución, orden o sentencia final dictada por el Tribunal de Primera Instancia al revisar un laudo arbitral. Véase Regla 32 (D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B; *Hosp. del Maestro v. UNTS*, 151 DPR 934, 941 (2000).

El auto de *certiorari* es un vehículo procesal extraordinario y discrecional que permite que un tribunal de mayor jerarquía revise determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR __ (2023); *McNeil Healthcare, LLC v. Mun. Las Piedras*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La característica principal de este recurso es la discrecionalidad que nos asiste para autorizar la expedición y adjudicar la controversia en sus méritos. *IG Builders et al. v. BBVAPR, supra*, en la pág. 338; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580, 596 (2011). El máximo foro judicial definió que la discrecionalidad es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). Empero, nuestra discreción no es absoluta dado que no podemos abstraernos del Derecho, debido a que constituiría abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

Por otro lado, nuestra discrecionalidad no opera en el abstracto ni está ausente de otros parámetros. *Rivera et al. v. Arcos Dorados et al., supra*; *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020); *IG Builders et al. v. BBVAPR, supra*, en la pág. 338; *Rivera Figueroa v. Joe´s European Shop, supra*. Pues, con el objetivo de que podamos ejercer sabiamente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, establece los criterios que debemos considerar al atender la solicitud de expedición del auto de *certiorari*. En particular, dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd.*

Por otro lado, la Regla 52.1 de Procedimiento Civil, *supra*, regula las instancias en las que podemos revisar determinaciones interlocutorias del Tribunal de Primera Instancia. *Rivera et al. v. Arcos Dorados et al.*, *supra*; *McNeil Healthcare, LLC v. Mun. Las Piedras*, *supra*, en la pág. 404; *IG Builders et al. v. BBVAPR*, *supra*, en las págs. 336-338. A saber:

Todo procedimiento de apelación, *certiorari*, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la Ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico. El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Regla 52.1 de Procedimiento Civil, *supra.*

De no estar presentes los criterios antes esbozados, corresponde abstenernos de expedir el auto de *certiorari*, de forma que se continúe con los procedimientos en el foro inferior.

-B-

La Regla 10.2 de Procedimiento Civil, *supra*, permite que la parte demandada solicite la desestimación de la demanda, previo a

contestarla, por los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable.

Al considerar una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal debe tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable para la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera v. ELA*, 183 DPR 1033, 1049 (2014). El tribunal debe "considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Pues, la demanda no debe desestimarse, excepto se demuestre que la parte demandante no tiene derecho a remedio alguno. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008). Igualmente, el tribunal no debe desestimar la demanda si es susceptible a enmendarse. *Íd.* Ello es así, dado que en nuestro ordenamiento jurídico existe una clara política pública de que los casos se ventilen en sus méritos y no se le prive a una parte de su día en corte. *Banco Popular v. SLG Negrón*, 164 DPR 855, 863 (2005).

-C-

En otro extremo, el Código Civil de Puerto Rico establece que son fuentes de las obligaciones: la ley, los contratos, los cuasicontratos, los actos ilícitos, los actos u omisiones en que interviene culpa o negligencia, y cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico. 31 LPRA sec. 8984. En particular, un contrato se define como "el negocio

jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". *Íd.*, sec. 9751. El Código Civil dispone que el perfeccionamiento de un contrato ocurre "desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". *Íd.*, sec. 9771. Así las cosas, las partes tienen la libertad contractual de acordar cualquier cláusula, siempre y cuando no sea contraria a la ley, a la moral ni al orden público. *Íd.*, sec. 9753. Ahora bien, es menester destacar que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". *Íd.*, sec. 9754. Por otro lado, si los términos pactados son claros y no dan lugar a dudas sobre la intención de las partes, se entenderá conforme con el sentido literal de las palabras. *Íd.*, sec. 6342. Los términos de un contrato se consideran claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, (2009); *Sucn. Ramírez v. Tribunal Superior*, 81 DPR 357, 361 (1959). Por cuanto, "en ausencia de ambigüedad, el cumplimiento con las cláusulas del contrato es obligatorio y su contenido es ley entre las partes". *San Luis Center Apts. et at. v. Triple-S*, 208 DPR 824, 832 (2022); *RJ Reynolds v. Vega Otero*, 197 DPR 699, 708 (2017).

Por otro lado, en nuestro ordenamiento jurídico se permite que las partes en un contrato se obliguen a someter las posibles controversias futuras derivadas de su relación contractual al procedimiento de arbitraje. *HR, Inc. v. Vissepó & Diez Constr.*, 190 DPR 597, 605 (2014). "Es por ello que el arbitraje es una figura

jurídica inherentemente contractual y es solamente exigible cuando las partes así lo hayan pactado". *Íd.* Concerniente a la controversia de marras, para que las controversias laborales se diriman mediante arbitraje obrero-patronal, se requiere que las partes hayan acordado mediante contrato o convenio someter las futuras controversias al procedimiento de arbitraje. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 91.

-D-

El arbitraje es un método alterno para la solución de conflictos que consiste en un proceso adjudicativo informal que las partes aceptan voluntariamente, en el que un árbitro o una árbitra permite que las partes presenten su versión de los hechos, sus teorías legales y su evidencia para emitir un laudo que resuelva la controversia. *Íd.* Previamente las partes deben acordar si el laudo será vinculante como decisión final o si no será vinculante, para que se celebre un juicio ordinario en un tribunal. *Íd.* Un laudo arbitral tiene una naturaleza similar a una sentencia o decreto judicial. *UIL de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 354 (1985).

Por otra parte, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. *UGT v. HIMA*, 2023 TSPR 86, 212 DPR __ (2023); *UGT v. Centro Médico del Turabo*, 208 DPR 944, 955 (2022); *CFSE v. Unión de Médicos*, 170 DPR 443, 449 (2007); *Martínez Rodríguez v. AEE*, 133 DPR 986, 995 (1993). Esto, dado que el arbitraje obrero-patronal es el mecanismo menos técnico, menos oneroso y más flexible para resolver las controversias que emanan de una relación laboral. *Íd.*; *Indulac v. Unión*, 207 DPR 279, 294 (2021). Por tal razón, un convenio de arbitraje "impone un carácter excluyente al proceso judicial, ya que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer en primera instancia de los conflictos o cuestiones litigiosas

sometidas a arbitraje". *Indulac v. Unión, supra,* en las págs. 293-294. De esta forma, la revisión de un laudo arbitral "se circunscribe a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia". *CFSE v. Unión de Médicos, supra.*

No obstante, esta norma de autolimitación encuentra una excepción cuando las partes pactaron que el laudo arbitral se emita conforme a derecho. Pues, el foro judicial debe realizar una revisión judicial más incisiva, teniendo la facultad de revisar los méritos del laudo arbitral y corregir los errores jurídicos, a tenor con las doctrinas legales y prevalecientes. *Íd.*; *Depto. Educ. v. Díaz Maldonado,* 183 DPR 315, 326 (2011); *Constructora Estelar v. Aut. Edif. Púb.,* 183 DPR 1, 33 (2011); *UGT v. HIMA, supra*; *Indulac v. Unión, supra,* en la pág. 295. Importante es que "[u]n laudo conforme a derecho confiere a las partes la certidumbre de que el resultado arbitral estará estrictamente aferrado a los límites de la ley, y que no se concederá un remedio más allá del provisto por nuestro andamiaje jurídico". *COPR v. SPU,* 181 DPR 299, 347 (2011). De lo contrario, cuando el convenio arbitral no dispone que los asuntos se resuelvan conforme a derecho, el árbitro o la árbitra puede determinar cuál es la ley aplicable y eludir el derecho sustantivo. *CFSE v. Unión de Médicos, supra.*

> **Como norma general, y cuando las partes no han acordado que el laudo sea conforme a derecho, finalizado el trámite de arbitraje, las determinaciones realizadas por el árbitro son finales e inapelables y no pueden litigarse ante los tribunales. Tampoco se puede indagar sobre el proceso deliberativo, mental y decisional del árbitro. Mucho menos resultan revisables alegados errores en la apreciación de la prueba o en la aplicación del derecho.** *Constructora Estelar v. Aut. Edif. Púb., supra,* en las págs. 32-33. (Énfasis nuestro).

Sin embargo, cualquier impugnación de un laudo arbitral, sea por las causas tradicionales o por no estar resuelto conforme a

derecho, debe realizarse a tenor con las reglas aplicables a la revisión de las decisiones administrativas. *UGT v. Challenger Caribbean Corp.*, 126 DPR 22, 29 (1990); *UIL de Ponce v. Dest. Serrallés, Inc., supra*, en las págs. 355-356.

Una de las instancias en las que se faculta a un tribunal a realizar una revisión judicial incisiva es cuando en el procedimiento de arbitraje se eludió el debido proceso de ley, es decir, un procedimiento justo en el que se le garantice a las partes las debidas garantías ofrecidas por la ley. *Indulac v. Unión, supra*, en la pág. 296. Empero, "el debido proceso de ley que se exige en un procedimiento de arbitraje es el mínimo necesario que acredite una resolución justa de la controversia". *Íd.*, en la pág. 297. A saber, "se cumple con el debido proceso de ley en el ámbito del arbitraje obrero-patronal si se le notifica e informa al agraviado de los cargos en su contra, se celebra una vista y se le da oportunidad al agraviado de someter evidencia". *Íd.*, en las págs. 297-298.

-D-

La AAA es una organización sin fines de lucro que ofrece servicios, procedimientos y facilidades para el arbitraje voluntario. Elkouri & Elkouri, *How arbitration works* (A. Miles Ruben, ed.), 6ta ed., Washington, DC, BNA Books, 2003, pág. 43. En el 1996, dicha organización adoptó las *National Rules for the Resolution of Employment Disputes*, actualmente conocidas como las *Employment Arbitration Rules and Mediation Procedures. Íd.*, en las págs. 35, 360; American Arbitration Association, *Employment Arbitration Rules and Mediation Procedures*, rev. 2017, p. 7. Estas reglas son contractualmente vinculantes cuando son incorporadas por referencia en un contrato de empleo. *Íd.* En lo que respecta a la forma del laudo arbitral, la Regla 39 (c) del *Employment Arbitration Rules and Mediation Procedures, supra*, dispone lo siguiente que "The award shall be in writing and shall be signed by a majority of

the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law." Véase 82 A.L.R. 2d *Necessity that arbitrators, in making award, make specific or detailed findings of fact or conclusions of law* sec. 10 (1962).

Persuasivamente, en *Hale v. Friedman*, 281 F.2d 635 (D.C. Cir. 1960), la Corte de Apelaciones de los Estados Unidos para el Circuito de Columbia interpretó lo que sigue:

> The rules of the American Arbitration Association do not provide for detailed findings of fact and conclusions of law. For us to find for appellants, we would have to hold that those rules do implicitly provide for such detailed findings when the arbitration occurs in the district of Columbia. **This would be equivalent to holding that the Association is bound to comply with the statutory rules respecting arbitration in whatever jurisdiction the controversy arises. This is obviously impossible. Further, the provision in the rules of the Association that the award shall be 'executed' in accordance with law does not require the making of findings or the giving of reasons.** Cf. Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S. Ct. 273, 100 L.Ed. 199 (1956). *Íd.*, en la pág. 636. (Énfasis nuestro).

Esbozada la normativa jurídica atinente a los hechos de este caso, nos encontramos en posición para resolver.

-III-

En su único señalamiento de error, el señor Rivera Sanfeliz planteó que el TPI incidió al desestimar la *Demanda* sobre revocación de laudo parcial de arbitraje que incoó, por concluir que el laudo en controversia no tenía que ser emitido conforme a derecho. Reiteró que, por el contrario, las Reglas de AAA, el laudo de arbitraje debe ser emitido conforme a derecho por el siguiente lenguaje: "It shall be executed in the manner required by law".

Tras un análisis sosegado del voluminoso expediente ante nuestra consideración, y a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1 y en la Regla 40 del Reglamento de este Tribunal, *supra*, R. 40, resolvemos que debemos

abstenernos de intervenir con la decisión del TPI en desestimar la *Demanda* incoada por el señor Rivera Sanfeliz al determinar que en el contrato de empleo entre el señor Rivera Sanfeliz y FirstBank no se pactó que las controversias sometidas al Panel de Árbitros se debían resolver conforme a derecho. De esta forma, la facultad revisora del Foro Primario era estrecha y limitada a que el señor Rivera Sanfeliz demostrara que el Panel de Árbitro actuó mediando fraude; ausencia de jurisdicción; omisión en resolver todas las cuestiones en controversia, o contrariedad a la política pública. Dado que el señor Rivera Sanfeliz no demostró las antes mencionadas circunstancias, no atisbamos que la determinación del TPI sea contraria a derecho o que dicho foro haya actuado con claro abuso de discreción, prejuicio, parcialidad o error claro y manifiesto. Así las cosas, nos corresponde abstenernos de expedir el auto de *certiorari.*

-IV-

Por los fundamentos que esbozamos a continuación, denegamos la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones