Frank ROSS, Appellant,

v.

**TWENTIETH CENTURY–FOX FILM CORPORATION**, a corporation, Appellee.

No. 14999.

United States Court of Appeals
Ninth Circuit.

Aug. 23, 1956.

Pacht, Ross, Warne & Bernhard, Stuart L. Kadison, Isaac Pacht, Los Angeles, Cal., for appellant.

Musick, Peeler & Garrett, Harold F. Collins, Theodore A. McCabe, Jr., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and HASTIE and CHAMBERS, Circuit Judges.

HASTIE, Circuit Judge.

■ This is an appeal from an order, entered in an action for breach of contract, requiring that all proceedings in the case be stayed to permit the submission of disputed issues to arbitration. The order is interlocutory. However, such a staying of a common law type action for breach of contract is now authoritatively held to be appealable under Section 1292(1) of Title 28 of the United States Code. Baltimore Contractors, Inc., v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233.

The district court had before it the complaint and answer and the text of the contract in suit. The contract is one under which Twentieth Century-Fox Film Corporation, hereinafter called Fox, purchased from appellant's assignor motion picture and other rights in a novel entitled "The Robe". The agreed purchase price was a percentage of the net profits to be realized from the distribution of a motion picture photoplay to be based upon the novel. The contract expressly obligated the purchaser to produce and distribute such a motion picture. Included in the contract were various provisions concerning "distribution in the United States and Alaska",

"distribution in Canada and all other foreign territories" and indeed concerning distribution "throughout the world". It is clear and not disputed that the purchase price was to be based upon the production of a motion picture and the interstate and foreign distribution and sale of that product.

The complaint here is that in its computation of the net profits of this venture Fox has improperly treated certain expenses of its business as costs of producing this film, thus materially diminishing the base upon which the sum payable to appellant is calculated under the contract. More particularly, appellant says that Fox's calculation of the "negative costs" of the motion picture has improperly included certain of the company's general capital expenditures not reasonably allocable to this production. It is also contended that Fox in computing net profits has violated a provision of the contract limiting its overhead charges to 25 percent of the direct cost of the photoplay. It is said further that Fox has listed items as expenses of the distribution of this film which were general promotional expenses in advertising and exploiting a new process called "Cinemascope". In addition it is claimed that Fox has based its own percentage fee for distribution—an allowable expense under the contract—upon an improperly inflated base. These principal items indicate the essential character of the complaint. The answer denied the several claims of improper charges and deductions in the computation of net profits.

The contract also provided that certain disputes be referred to an acceptable "national firm of certified public accountants" for arbitration. One matter expressly made referable to arbitration was any dispute as to Fox's itemized computation of "negative cost", with each party to follow certain procedures in connection with the creation of such an issue. In more general terms the contract also provided that any controversy as to any accounting with respect to net profits should be submitted to cer-

tified public accountants for arbitration. The district court thought that these circumstances made appropriate the exercise of the power Section 3 of Title 9 of the United States Code confers upon a district court to stay a proceeding pending before it to permit arbitration.

■ One of appellant's principal contentions is that Section 3 of Title 9 of the United States Code is inapplicable to this case because stay orders are authorized only when the subject matter in litigation is, as stated in Section 2 of that Title, "a contract evidencing a transaction involving commerce". True, it is now settled that beyond maritime matters, Section 3 of Title 9 is concerned only with procedure for the arbitration of contracts "evidencing a transaction involving commerce". Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273. But we are satisfied that such a contract is in suit here. This contract specifically calls for the production of a motion picture for national and even world-wide sale and distribution. That provision is no minor or incidental aspect of the bargain. The essential consideration which the seller sought and obtained was the promise of the buyer to produce and widely distribute a motion picture photoplay and to pay the seller a percentage of the substantial sum it was hoped this venture in commerce would net. It is to be emphasized that this was not the ordinary sale of a commodity for a fixed sum with a view to its use in commerce, as when gasoline is sold and delivered into the tanks of trucks moving in interstate commerce. Here, the production and distribution of a motion picture, no less than the transfer of rights in a novel, constitute the economic subject matter of the bargain. We are satisfied that such a contract is one "evidencing a transaction in commerce", and therefore, that the power to grant a stay conferred by Section 3 of Title 9 extends to this case.

■■ Next, it is argued that, even if this contract is the sort contemplated by Section 3 of Title 9, the interpretation of the contract is still a matter of California law, and it must be determined by reference to that law whether the contract contains language which amounts to a provision for arbitration. We think that this is a correct analysis supported by Bernhardt v. Polygraphic Co. of America, supra. Accordingly, we have examined the contract and the law of California to determine whether this contract presents an enforcible agreement to arbitrate. In that process we have considered a contention by appellant that what this contract contemplates and designates as "arbitration" is too informal to be recognized as arbitration under California law. Appellant stresses the fact that this contract authorizes the arbitrator to "secure advice and information independently", in addition to such matter as the parties may submit. But in two recent cases, the Supreme Court of California has ruled that such procedure is proper, so long as the parties themselves are not denied a hearing on any disputed questions of fact and the ultimate award is made in the exercise of the arbitrator's own judgment. Griffith Co. v. San Diego College for Women, 1955, 45 Cal.2d 501, 289 P.2d 476, 47 A.L.R.2d 1349; Sapp v. Barenfeld, 1949, 34 Cal.2d 515, 212 P.2d 233. True, in the present case the contract, although expressly asserting the right of each party to present its view to the arbitrator, does not in terms call for a hearing. However, it does provide that the arbitrator's decision shall be effective as an arbitration award under "Title 9, Part 3 of the Code of Civil Procedure of the State of California", which regulates and defines proper arbitration procedure in California. We think it fairly to be understood that a contractual undertaking thus tied into the California law contemplates that the arbitration shall proceed and be conducted in a manner that comports with the California law of arbitration.

■ It is also argued that the nature of the issues which this contract refers to an impartial third person for settlement prevents the third person's function from being "arbitration" as distin-

guished from mere "appraisement". This argument is closely related to a separate contention that the matters in dispute here are in reality not the type of thing which the contract contemplates in its provision that certain matters be referred to accountants for settlement. These points will be considered together.

The key provision of the contract is in these words: "In case any controversy shall arise between the parties hereto as to any accounting by Purchaser with respect to the share of Pictures in the net profits of the Picture, the questions in controversy shall be submitted for determination to certified public accountants in the City of New York, acceptable to the parties hereto, * * *" In its motion to stay this action in the district court appellee has asserted that the controversy between the parties involves "the proper allocation of costs and profits referable to the production and distribution of the photoplay, 'The Robe'". The complaint and answer support this statement. As we view the matter the controversy seems to require for its resolution both factual analysis and the exercise of expert judgment with reference to such evidence as may be presented, concerning the relation of various expenditures to a particular project on the one hand and to the general business of Fox on the other. Facts must be marshalled, analyzed and interpreted in the light of the history of this production and the scope and organization of the business conducted by Fox, and the entire complex must be given effect in accordance with sound and proper accounting practice. Indeed, whether the matter is decided by a judge or an arbitrator, the pleadings suggest that accepted concepts of accountancy as to reasonable and proper allocation of expenditures are likely to be decisive. Indeed, there is no indication that the parties are in disagreement as to legalism apart from problems of accounting. Thus, Article XIX of the contract specifies that "The 'net profits' from the distribution of the Picture under this Agreement shall be computed by deducting Purchaser's distribution fees, distributing expenses (such as cost of prints, advertising, etc.) and negative cost from the gross receipts of the Picture throughout the world, subject to the particular matters mentioned below." The next sub paragraph fixes the "Purchaser's distribution fees" on a precise percentage basis. Similarly, it is provided that "The charge to negative cost on account of Purchaser's overhead shall be twenty-five percent (25%) of direct charges * * *." Thus, legally the scheme to be followed is clearly outlined in the contract, and the present disagreement concerns the accounting classifications to which items are to be allocated in carrying out that scheme. We think this is the very type of disagreement which the parties must have contemplated in providing for the arbitration of "any controversy * * * as to any accounting by Purchaser with respect to the share of Pictures in the net profits of the Picture." It is our conclusion that this controversy presents both a type of dispute which may appropriately be submitted to arbitration and the very kind of dispute which these parties have agreed to arbitrate. We are satisfied that the order entered by the district court was lawful and proper.

The judgment is affirmed.