**COLLINS RADIO COMPANY,**
Appellant,

v.

**EX–CELL–O CORPORATION, Appellee.**

**No. 72–1029.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1972.

Decided Oct. 18, 1972.

Donald G. Ribble, William M. Dallas, Lynch, Dallas, Smith & Harman, Cedar Rapids, Iowa, for appellant.

James H. Carter, Caryl W. Garberson, Harry E. Wilmarth, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellee.

Before MATTHES, Chief Judge, and LAY and HEANEY, Circuit Judges.

MATTHES, Chief Judge.

This controversy is between plaintiff-appellant Collins Radio Co., an Iowa corporation, and defendant-appellee Ex-Cell-O Corp., a Michigan corporation. The question for determination is whether the Federal Arbitration Act or the appropriate state law on arbitration agreements is determinative of the validity of an arbitration clause in an interstate commercial contract when jurisdiction rests on the diverse citizenship of the parties.[1]

In 1966, Collins began purchasing computer parts from Ex-Cell-O, the parts being shipped from Ex-Cell-O's Michigan plant to the Texas plant of Collins. The sales were effected under three separate purchase orders. The third purchase order was executed with a purchase agreement that did not apply to the first two orders. This purchase agreement, which was drafted by Collins, made provision (1) for termination payments to Ex-Cell-O if Collins terminated the contract, (2) for arbitration of the termination payments if the parties could not agree, and (3) that Texas law governed the agreement.

Collins brought this suit by filing in federal district court a three-count complaint, one count for each purchase order, alleging negligence, defective merchandise, and breach of both contract and warranties. Collins prayed for a judgment of $3,952,561.00, plus interests and costs.

Ex-Cell-O responded to the complaint by serving on Collins its demand to arbitrate the termination charges pursuant to the arbitration clause Collins had drafted into the agreement. Collins,

---

1. If the Arbitration Act were an independent basis of federal question jurisdiction, Collins's contentions would be easily answered because they all rest ultimately upon the Erie Doctrine. However, neither party has contended the Act confers jurisdiction, and, in view of 9 U.S.C. § 4, that question apparently would receive a negative answer if it were presented in this case. See Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc., 271 F.2d 402, 408 (2nd Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

however, then applied to the district court for an order enjoining enforcement of the arbitration clause. Collins alleged that Texas law governed the question of the validity of the clause and that the requisites of the Texas Arbitration Act had not been satisfied. Ex-Cell-O resisted this application and requested a stay of the entire action pending arbitration. The district court, Chief Judge McManus, denied Collins's application for an injunction and granted Ex-Cell-O's application for a stay. Collins appeals from both orders, arguing that the arbitration clause is invalid, or, alternatively, that it affects only count three of the complaint and therefore that counts one and two should not have been stayed. We shall discuss these contentions seriatim.

### I.
The Validity of the Arbitration Clause

The primary issue in this case begins with the clear holding of the Supreme Court in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), that a federal court is to determine the validity of an arbitration clause separately from the validity or invalidity of the main contract. See 388 U.S. at 403–404, 87 S.Ct. 1801. The question posed here is what law governs that independent finding. Collins's major premise as to that question is that the Federal Arbitration Act, 9 U.S.C. §§ 1–14, cannot be the applicable law because that statute prescribes no substantive rules of contract law and Erie Railway Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), prevents federal courts from reading those rules into the statute. Collins therefore concludes that, pursuant to *Erie*, federal courts in diversity cases must apply state law to determine

the validity of arbitration clauses and the Federal Act merely provides the procedure for implementing clauses found to be valid under state law. Collins then contends that the applicable state law in this case is Texas law because it was chosen by the parties to govern the main agreement, and that this arbitration clause fails to meet the alleged requirement of the Texas Arbitration Act [2] that arbitration agreements bear the acknowledgment of a Texas-licensed attorney for each party that his client has been advised of the ramifications under Texas law of agreeing to arbitration.

▆▆▆▆ While we have grave doubts that the Texas statute contains the provincial requirement that the advising attorneys be licensed in Texas, we need not decide that state law question of first impression because we hold the Federal Act bars resort to state arbitration rules to determine the validity of arbitration clauses in interstate contracts.

▆▆▆▆ The portion of the Federal Arbitration Act relevant to Collins's contention is 9 U.S.C. § 2, which provides in pertinent part:

"A written [arbitration] provision in any maritime transaction or a contract evidencing a transaction involving [interstate or foreign] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Despite the rather unequivocal language of the statute, Collins contends it was enacted only to reverse the antiquated state rules making arbitration agreements revocable at will any time prior to issuance of an award. This argument inferentially contends that while abrogating one limiting rule, Congress al-

---

2. The Texas Arbitration Statute, Tex.Rev. Civ.Stat.Ann. Art. 224 (Vernon Supp. 1972), provides in pertinent part:

"A written agreement concluded upon the advice of counsel to both parties as evidenced by counsels' signatures thereto to submit any existing controversy to arbitration or a provision in a writ-

ten contract concluded upon the advice of counsel to both parties as evidenced by counsels' signatures thereto to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

lowed the states to devise any other rule imaginable to impede utilization of arbitration in interstate commerce. However, the obvious breadth of the statute refutes that contention. Section 2 clearly is not limited merely to voiding one doctrine of revocability. It plainly voids all doctrines of invalidity, unenforceability and revocability which apply only to arbitration agreements. The plain meaning of § 2 is that federal courts are no longer to apply state statutes and decisions which limit arbitration agreements with rules not applicable to other contracts. Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc., 271 F.2d 402, 404–409 (2nd Cir. 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed under Rule 60, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *See* American Airlines, Inc. v. Louisville and Jeff. Cty. Air Bd., 269 F.2d 811, 816–817 (6th Cir. 1959). *See also* Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir. 1971).

Furthermore, we see no impediment to this view flowing from the Erie Doctrine. While *Erie* does hold that there is no federal power to prescribe substantive rules for diversity cases as such, the Erie Doctrine has progressed through the outcome-determinative test of Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), to the realization in Byrd v. Blue Ridge Rural Elec. Co-op., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), and Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), that in some instances federal rules which alter the outcome of a diversity case nevertheless rest upon federal constitutional powers independent of the diversity jurisdiction and thus must be applied by the courts if Congress so directs. Indeed, the Supreme Court applied this precise rationale to the Federal Arbitration Act when it said in *Prima Paint*:

"There remains the question whether such a rule is constitutionally permissible. The point is made that, whatever the nature of the contract in-

volved here, this case is in federal court solely by reason of diversity of citizenship, and that since the decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts are bound in diversity cases to follow state rules of decision in matters which are 'substantive' rather than 'procedural,' or where the matter is 'outcome determinative.' Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. See Bernhardt v. Polygraphic Co., supra, 350 U.S. [198] at 202, and concurring opinion, at 208, 76 S.Ct. [273] at 275 and at 279 [100 L.Ed. 199]. Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative. And it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.' H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924); S. Rep. No. 536, 68th Cong., 1st Sess., 3 (1924)."

. . . . . .

"Federal courts are bound to apply rules enacted by Congress with respect to matters—here, a contract involving commerce—over which it has legislative power."

388 U.S. at 404–406, 87 S.Ct. at 1806. Accordingly, *Erie* is no impediment to applying the Federal Arbitration Act in a diversity case.

Finally, we look to the five cases Collins cites as being contrary to our conclusion and find that only one so holds. In both Dorton v. Collins & Aikman Corp., 453 F.2d 1161 (6th Cir. 1972), and Southeastern Enameling Corp. v. General Bronze Corp., 434 F.2d 330 (5th

Cir. 1970), the controversy arose in a battle of commercial forms, and each court approached each case as posing questions of the validity and terms of a whole contract, not the separate validity of an arbitration clause under a separate state statute on arbitration. Furthermore, despite the fact the controverted "form" term in each case was whether an arbitration clause became part of the contract, the court in each case applied the applicable general contract law of the state, not a special state rule governing validity of arbitration clauses. Accordingly, neither of these cases is inconsistent with the conclusions we have reached in this case.

Similarly in American Airlines, Inc. v. Louisville and Jeff. Cty. Air Bd., 269 F. 2d 811 (6th Cir. 1959), the court expressly held, as we have, that state statutory and case law on the validity of arbitration agreements "must yield to paramount Federal law" and held further that the question of validity is to be determined "in accordance with ordinary contract principles under applicable State and Federal law." See 269 F.2d at 816–817. It was in applying the ordinary contract principle of capacity to contract that the court relied heavily upon state law, the allegation being that under state municipal corporations law it was *ultra vires* the Air Board's authority to enter a contract delegating to others the power to determine the rental fees of lessee airlines. Accordingly, this case also is not inconsistent with our conclusions herein.

In Butler Prod. Co. v. Unistrut Corp., 367 F.2d 733 (7th Cir. 1966), the court did say, "since this is a diversity case, Illinois law on arbitration is determinative, but the federal and Illinois authorities are in accord in this field." 367 F. 2d at 735. However, this comment did not bear on the issue presented here because the question in *Butler* was not whether the arbitration clause was valid, but whether the concededly valid clause encompassed the subject the movant desired to arbitrate thereunder.

The one case Collins cites which can be said to be contrary to our conclusions is Ross v. Twentieth Century Fox Film Corp., 236 F.2d 632 (9th Cir. 1956). In that case the court did hold state law to be determinative of whether the arbitration clause was sufficiently precise to be valid. However, the court indicated it chose state law because it read Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), as mandating that result because of *Bernhardt's* construction of the Erie Doctrine outcome determinative test.[3] As we have shown above, this reading of the Erie Doctrine has subsequently been rejected by the Supreme Court in *Prima Paint*. Accordingly, *Ross* does not dissuade us from the conclusions reached above.

In sum, special state laws or decisions governing the validity of arbitration agreements do not apply when those agreements are contracts, or parts of contracts, "evidencing a transaction involving [interstate or foreign] commerce." Accordingly, since Collins raised only the Texas Arbitration Act and did not contend this arbitration clause was vitiated by any general contract principle, we affirm Judge McManus's denial of Collins's application for an injunction. In so deciding, however, we note this case does not question the validity of an arbitration clause under general contract law, and we there-

3. In Bernhardt v. Polygraphic Co., *supra,* the Supreme Court did not reach the question presented in this case and in *Ross* because it found the Federal Arbitration Act inapplicable to the contract there involved because the contract concerned only intrastate commerce. However, the Bernhardt Court, especially Mr. Justice Frankfurter in concurrence, in expressing relief at avoiding the question of the effect of the outcome determinative test on the applicability of the Federal Act in diversity cases, clearly inferred that test would result in the application of state law. Thus, the Ross court properly read *Bernhardt*. But see Robert Lawrence Co. v. Devonshire Fabrics, Inc., *supra,* 271 F.2d at 409 n. 7. However, as indicated in the text, *Bernhardt's* dictum was rejected in *Prima Paint*.

fore do not reach the question whether, in such cases, a federal court is to find those principles in state law or a federal common law. *Compare* Hart v. Orion Ins. Co., *supra,* and Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc., *supra,* with Dorton v. Collins & Aikman Corp., *supra,* Southeastern Enameling Corp. v. General Bronze Corp., *supra,* and American Airlines, Inc. v. Louisville and Jeff. Cty. Air Bd., *supra.*

## II. The Stay Order

■ Collins's alternative claim is that if the arbitration agreement is valid, as we have held, the stay order should apply only to count three of Collins's three-count complaint because counts one and two are premised upon two purchase orders which are separate from the third order which contained the arbitration clause. We think, however, that such a stay is a matter within the sound discretion of the district court and that Judge McManus's order was not an abuse of that discretion. Accordingly, the order to stay all the proceedings pending arbitration is affirmed.